NOT DESIGNATED FOR PUBLICATION

No. 118,382

IN THE COURT OF APPEALS OF THE STATE OF KANSAS

STATE OF KANSAS,
*Appellee*,

v.

CHASE L. COBLE,
*Appellant*.

MEMORANDUM OPINION

Appeal from Reno District Court; TRISH ROSE, judge. Opinion filed July 26, 2019. Affirmed.

*Korey A. Kaul*, of the Kansas Appellate Defender Office, for appellant.

*Keith E. Schroeder*, district attorney, and *Derek Schmidt*, attorney general, for appellee.

Before ARNOLD-BURGER, C.J., HILL and GARDNER, JJ.

PER CURIAM: This is an appeal by Chase Coble of his conviction for one count of aggravated arson. We reject his claim of a charging error and find there is sufficient evidence to support his conviction. We affirm.

*Weird science makes weird facts.*

When Hutchinson firefighters arrived at the Plaza Towers apartment building in response to a fire alarm on the twelfth floor, they forced open the door to apartment 12-E and discovered fire and smoke inside. The sprinkler system was shut off. They discovered soot and charring in three areas: the living room; a closet; and the kitchen.

1

About two inches of water covered the floor of the apartment which eventually drained to the apartment directly below. The firefighters found chemicals, beakers, test tubes, and other laboratory equipment.

The fire alarm sounded on June 21, 2016, around 6:50 a.m. Two Hutchinson Fire Department fire engines were dispatched. About 75 people lived in the building at the time. Some residents were evacuated because of the alarm.

Hutchinson police officers arrived to assist, and they found Coble, who lived in apartment 12-E, sitting on a chair outside the apartment. He was not wearing a shirt and had burns extending from the middle of his chest to his stomach. Coble declined medical attention. He said he was a "chemistry major" and received the chemical burns about a week earlier when an experiment mixing muriatic acid and another material "flash[ed] over." He had taken four chemistry classes in college, but he was essentially self-taught.

This fire started on top of a deep freeze in the living room, which set off the sprinkler system. Coble explained that the fire was caused by an experiment he was working on. The experiment flare-up occurred in a bowl he had placed in the center of some kitty litter "in case something happened." The heat from the flare-up triggered the apartment's sprinkler system, and when the water entered the solvent, it caused a negative reaction. The fire then got "out of hand."

The Sedgwick County Sheriff's Department's Regional Hazmat Response team came in to help identify the various chemicals in Coble's apartment. The State Fire Marshal's Office, the Federal Bureau of Investigation, and the Bureau of Alcohol, Tobacco, Firearms, and Explosives were also called to assist with the investigation.

A search of the apartment found glass fragments in the kitty litter on top of the deep freeze. Coble used the deep freeze as a work bench. The deep freeze and the carpet

2

below it had visible charring and kitty litter scattered about. A V-shaped burn pattern ran up the wall from the top of the freezer on the ceiling.

Coble had several chemistry textbooks. Chemistry supplies such as beakers, test tubes, a hose, and digital scales were located throughout the apartment. Containers of chemicals were also found. They found sulphur, stump remover, toluene, camping fuel, bags of dry ammonia, hydrochloric acid, phosphorus pentabromide, and sulfuric acid.

A large window from the living room had been removed and was in the bedroom closet. The building owner stated the windows in Coble's apartment were fixed and could not be opened. Coble admitted that he removed several screws and took out the window because he did not want to go down twelve flights of stairs to smoke. On a rooftop nine or ten stories below the open window, officers observed a three-neck beaker, pieces of PVC pipe, and a large knife.

ATF and FBI agents interviewed Coble. He admitted he performed chemical experiments in his apartment. Coble was knowledgeable in the area of chemistry and explosives. He explained that the chemical burns on his torso were caused when he was trying to create a potentially fatal chlorine gas. He acknowledged that the gas also caused him to have respiratory issues and he did not perform that experiment again. Coble knew what "personal protection equipment" was and said he was deficient in his "PPE."

Coble admitted causing chemical exothermic reactions that generated heat in his apartment on at least 50 occasions in the year before the June 21 fire. Ten to 20 had occurred in the previous seven months. He admitted that at least three of those caused damage in his apartment. Coble admitted his experiment on June 21 got out of control and set off the sprinkler system. He claimed that the other two flare-ups did not cause any damage, but just created a lot of smoke. He said the soot from those flare-ups could be easily wiped off.

3

The State Fire Marshal's Office contends that there were three intentionally set incendiary fires in Coble's apartment. One was on top of the freezer in the living room, one was in a closet, and one was in the kitchen.

The State charged Coble with three counts of aggravated arson and two counts of criminal use of explosives. For some reason that is unclear in the record, the three aggravated arson counts used identical language. The two criminal use of explosives charges were later dismissed. The jury found Coble guilty of one count of aggravated arson and not guilty on the two remaining counts. The court sentenced Coble to 66 months in prison and ordered him to pay over $7,800 for restitution.

*Coble raises an argument not made in district court.*

For the first time on appeal, Coble claims his due process rights were violated. In his view, the verdict is ambiguous because all three of the aggravated arson charges were identical. This means that we cannot review the evidence because it is impossible to determine for which of the three counts of aggravated arson he was found guilty. To preserve Coble's fundamental right that his conviction can be sustained only upon evidence proving each element of this crime beyond a reasonable doubt, we will consider the issue. See *State v. Barker*, 18 Kan. App. 2d 292, 295, 851 P.2d 394 (1993).

Without a satisfactory explanation why, the State admits that the counts of aggravated arson did not differentiate the three charges by specifying the three locations of the fires. That is, one fire in the living room, one fire in the closet, and one fire in the kitchen. The State further acknowledges that it, at first, did not propose a multiple acts instruction for aggravated arson, but argues that the district court's failure to give a unanimity instruction was not clearly erroneous.

4

Coble argues that the jury verdict was ambiguous because it did not specify which incendiary event was alleged in count one—the count where he was found guilty. The State argues that the invited error doctrine should prevent appellate review of this issue. The State's argument is persuasive.

A litigant may not invite error and then complain of the error on appeal. *State v. Verser*, 299 Kan. 776, 784, 326 P.3d 1046 (2014). The invited error doctrine applies only when a party both fails to object and invites the error by other actions; an invited error will be reviewed only if it is structural error. *State v. Logsdon*, 304 Kan. 3, 31, 371 P.3d 836 (2016).

For example, under the invited error doctrine, a defendant cannot challenge an instruction on appeal, even as clearly erroneous under K.S.A. 2018 Supp. 22-3414(3), when there has been an on-the-record agreement to the wording of the instruction at trial. *State v. Peppers*, 294 Kan. 377, 393, 276 P.3d 148 (2012).

More facts are important here. One of the jury's questions to the judge read: "Do the 3 counts apply to specific locations or events & if they do which ones belong to which counts." The judge proposed to counsel that he respond by telling the jury to refer to the instructions already given. Defense counsel agreed, stating, "That's, that's my opinion." The State, however, suggested that the court supplement its answer by giving the jury the multiple acts instruction from PIK Crim. 68.100 (2016 Supp.), which advises the jurors that they have to unanimously agree upon the act in each count. Defense counsel disagreed and argued, "I don't think it's appropriate to add an instruction at this point." The district court told the jury to refer to the instructions already given.

So we can see the jury specifically asked for clarification on whether the three counts of aggravated arson accompanied the three specified locations, and, if so, which of the three locations went with each count. Coble did not merely fail to object or merely

5

acquiesce to the district court's suggested response to refer to the instructions already given. Coble stated that he agreed with the district court's suggestion. Coble then argued against the State's request to supplement the court's answer with an instruction advising the jury to unanimously agree upon the act in each count of aggravated arson. Coble claimed it was inappropriate to provide the instruction. After the district court had earlier refused the State's suggestion to augment its answer to the jury's first question, Coble would have understood—when he argued against the clarifying instruction—that the district court would not supplement its responses without Coble's agreement.

Knowing that the district court would not give an instruction he did not agree to, Coble did not object to the district court's proposed answer, agreed with it, and argued against the State's clarifying instruction. Coble also agreed to the wording of the district court's response on the record. He failed to object and invited the ambiguity by other actions. The invited error doctrine applies.

Even so, we find this entire argument unpersuasive because two of the aggravated arson charges ended in acquittal. The record shows that after the State rested its case, Coble moved for a judgment of acquittal on Counts 2 and 3 of aggravated arson because the evidence did not establish that they occurred on June 21, 2016, "[t]here has been really no evidence to substantiate II and III. The date is the 21st of June 2016, on both of those. I didn't hear any testimony that there were three such events on that day." The State argued the approximate dates in Counts 2 and 3 were sufficient because they were within the statute of limitations. The district court denied the motion and found that the State met its burden on counts two and three.

Even more significant, the record shows that both parties' closing arguments to the jurors informed them that the event on June 21, 2016, was reflected in Count 1. The State argued there were three events:  one was in a closet; one was in the kitchen; and "one near the entryway that caused the smoke alarms to go off and sprinkler systems and that's

6

what caused us all to be here today. We know the last one occurred on June the 21st of 2016. The others occurred sometime before . . . ."

Coble's attorney argued at length to the jury about the elements of aggravated arson and whether the State met its burden to prove those elements for the event on June 21, 2016. She then separated her argument from the events of June 21, 2016, and succinctly argued, "Counts Two and Three were never specified nor were they proven by the state. There was vague mention of other minor damage in the apartment, but never addressed with any specificity. Therefore you must return a verdict of not guilty on those two counts." The jury did so.

Given this record we see no ambiguity in the jury's verdict. The arguments of both parties steered the jury into considering Count 1 applied to the fire of June 21. That means the real question remains. Did the State prove Coble guilty beyond a reasonable doubt on Count 1? We will proceed to the sufficiency of the evidence.

*Viewed in the light most favorable to the State, sufficient evidence supports the verdict.*

When sufficiency of the evidence is challenged in a criminal case, the standard of review is whether, after reviewing all the evidence in a light most favorable to the prosecution, the appellate court is convinced a rational fact-finder could have found the defendant guilty beyond a reasonable doubt. Appellate courts do not reweigh evidence, resolve evidentiary conflicts, or make witness credibility determinations. *State v. Chandler*, 307 Kan. 657, 668, 414 P.3d 713 (2018).

The criminal charge here arises under K.S.A. 2018 Supp. 21-5812(a)(1)(A), (b)(1). That law defines aggravated arson as: "Knowingly, by means of fire or explosive damaging any building or property which . . . [i]s a dwelling in which another person has

7

any interest without the consent of such other person." The charge becomes aggravated if it is "[c]ommitted upon a building or property in which there is a human being."

This fire started on the 12th floor of an occupied apartment building where about 75 people were living. It caused extensive damage to Coble's apartment and the one below. But Coble limits his argument. He contends the State failed to prove beyond a reasonable doubt only that he acted knowingly that morning of June 21, 2016. In his view, the State "presented no evidence that Mr. Coble would have been reasonably certain that his experiment would cause the smoke damage."

A verdict may be supported by circumstantial evidence, if that evidence provides a basis for a reasonable inference by the fact-finder about the fact in issue. Circumstantial evidence, to be sufficient, need not exclude every other reasonable conclusion. *Logsdon*, 304 Kan. at 25. A conviction of even the gravest offense can be based on circumstantial evidence. 304 Kan. at 25.

The record establishes that Coble had taken four college chemistry classes. He knew what "personal protection equipment" was and said he was deficient in his "PPE." He used kitty litter around his experiments as a fire precaution. He acknowledged that three of his experiments caused damage in his apartment. He received chemical burns about a week before the June 21 living room event after an experiment mixing muriatic acid and another material to make chlorine gas "flash[ed] over." He acknowledged that the gas also caused him to have respiratory issues so he did not perform that experiment again. Coble admitted that he caused at least 50 chemical exothermic reactions in his apartment before this fire got out of hand. This was another intentional experiment that was uncontrolled.

Based on this evidence, when viewed in a light most favorable to the State, it was reasonable for the jury to find that Coble was experienced. He was aware that bodily

harm and property damage were possible from his experiments. He also understood that his experiments warranted precautions. The record shows the State met its burden to prove beyond a reasonable doubt that Coble acted knowingly when he conducted his chemical experiment on June 21, 2016. His conviction is affirmed.

Affirmed.